[No. 86610-4. En Banc.]
Argued May 22, 2012. Decided December 20, 2012.

THE STATE OF WASHINGTON, *Petitioner*, v. GILBERTO CHACON ARREOLA, *Respondent*.

*D. Angus Lee, Prosecuting Attorney,* and *Tyson R. Hill, Deputy,* for petitioner.

*Susan M. Gasch* (of *Gasch Law Office*), for respondent.

*Shelley A. Williams, Assistant Attorney General,* on behalf of Washington State Patrol, amicus curiae.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Christina N. Dimock, Sarah A. Dunne, Nancy L. Talner,* and *Douglas B. Klunder* on behalf of American Civil Liberties Union of Washington, amicus curiae.

¶1 GONZÁLEZ, J. — The issue in this case is whether a traffic stop motivated primarily by an uncorroborated tip, but also independently motivated by a reasonable articulable suspicion of a traffic infraction, is unconstitutionally pretextual under article I, section 7 of the Washington State Constitution and *State v. Ladson*, 138 Wn.2d 343, 979 P.2d 833 (1999).

¶2 We hold that a mixed-motive traffic stop is not pretextual so long as the desire to address a suspected traffic infraction (or criminal activity) for which the officer has a reasonable articulable suspicion is an actual, conscious, and independent cause of the traffic stop. So long as a police officer actually, consciously, and independently determines that a traffic stop is reasonably necessary in order to address a suspected traffic infraction, the stop is not pretextual in violation of article I, section 7, despite other motivations for the stop.

## I. FACTS AND PROCEDURAL HISTORY

¶3 The relevant facts, which were found by the trial court following a suppression hearing and affirmed by the Court of Appeals, *see State v. Chacon Arreola*, 163 Wn. App. 787, 795-96, 260 P.3d 985 (2011), are unchallenged before this court and thus are verities on appeal, *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005).

¶4 On October 10, 2009, Officer Tony Valdivia of the Mattawa Police Department responded to a report of a possible DUI (driving under the influence) in progress. *See* RCW 46.61.502. Upon arrival, Officer Valdivia located a vehicle matching the description from the report. Officer Valdivia followed behind the vehicle for approximately half of a mile, which took approximately 30 to 45 seconds.

Officer Valdivia did not observe any signs of DUI but did observe that the vehicle had an altered exhaust in violation of RCW 46.37.390. Still without any signs of intoxicated driving, Officer Valdivia then activated his overhead lights and pulled over the car.

¶5 The trial court found that Officer Valdivia's "primary motivation in pulling the car over was to investigate the reported DUI," but this "was not the sole reason for the stop." Clerk's Papers (CP) at 47. The muffler violation was also "an actual reason for the stop," and Officer Valdivia "would have stopped the vehicle, once following it, even if he wasn't suspicious of a DUI, and even though his primary purpose for stopping the vehicle was to further investigate a possible DUI." CP at 48. Officer Valdivia testified that he would sometimes commence a traffic stop for an altered muffler because as a member of the community, he appreciates concerns about the excessive noise that such mufflers emit. He explained that whether he commences a traffic stop for that particular infraction depends on what else he is doing at the time. Although Officer Valdivia would not go out of his way to chase down a car with an altered muffler, he often would commence a traffic stop if already on the road and behind such a vehicle, so long as conducting the stop would not hinder a more pressing investigation. Officer Valdivia testified about a recent example in which he was on the road and pulled over a car due to an altered muffler and also testified that he had pulled over vehicles for that reason on numerous occasions. Officer Valdivia testified that in this case he made a conscious decision to make the traffic stop because of the altered muffler.

¶6 The trial court found Officer Valdivia to be credible as a witness. The trial court thus found that Officer Valdivia "commonly stops vehicles for exhaust violations" and "would have stopped the vehicle anyway for the exhaust infraction even without the previous [DUI] report." CP at 47. At the same time, Officer Valdivia was relatively more interested in the potential DUI in this particular case, and

he admitted that he was motivated to conduct the traffic stop primarily to detect further signs of DUI.

¶7 After pulling over and approaching the car, Officer Valdivia recognized Respondent Gilberto Chacon Arreola as the driver, detected an "odor of alcohol," observed that Chacon's "eyes were red and watery," and saw "two passengers and several open containers of alcohol in plain view inside the vehicle." CP at 47. Up to that point, Officer Valdivia had "treated the stop just like any other traffic stop." CP at 48. Officer Valdivia eventually cited Chacon for the exhaust infraction and for failure to provide proof of insurance and arrested him based on outstanding warrants.

¶8 Chacon was charged with DUI and driving while license revoked in the first degree. Chacon argued that the traffic stop was pretextual and sought to suppress all evidence related to the stop, but the trial court concluded that the "stop was not unconstitutionally pretextual" because the muffler infraction "was an actual reason" for the stop. CP at 48. Chacon was convicted of DUI and driving while license revoked in the first degree.

¶9 On appeal, the Court of Appeals upheld the trial court's findings of fact from the suppression hearing but disagreed with the trial court's resulting conclusion that the traffic stop was constitutional. *Chacon Arreola*, 163 Wn. App. at 796-97. The Court of Appeals acknowledged that the muffler infraction was an actual reason for the stop but held that because "it was clearly subordinate to the officer's desire to investigate the DUI report," and "only a secondary reason," the muffler infraction could not provide authority of law for the traffic stop. *Id.* at 797. The State petitioned this court for review of that purely legal issue, and we granted the petition for review. *State v. Chacon Arreola*, 173 Wn.2d 1013, 272 P.3d 246 (2012).

## II. STANDARD OF REVIEW

¶10 We review conclusions of law in an order pertaining to suppression of evidence de novo. *Gaines*, 154 Wn.2d at 716.

## III. ANALYSIS

*1. The Right to Privacy under Article I, Section 7*

¶11 Article I, section 7 of the Washington State Constitution protects the "private affairs" of each person from disturbance imposed without "authority of law." CONST. art. I, § 7. This provision of our state constitution is explicitly broader than the Fourth Amendment to the United States Constitution, protecting private affairs broadly and also requiring actual legal authorization for any disturbance of those affairs. *See, e.g., Ladson*, 138 Wn.2d at 348-49; *cf.* U.S. CONST. amend. IV (protecting "persons, houses, papers, and effects, against unreasonable searches and seizures").

¶12 Under article I, section 7, the right to privacy is broad, and the circumstances under which that right may be disturbed are limited. Article I, section 7 is "not grounded in notions of reasonableness" as is the Fourth Amendment. *State v. Snapp*, 174 Wn.2d 177, 194, 275 P.3d 289 (2012). Instead, article I, section 7 is grounded in a broad right to privacy and the need for legal authorization in order to disturb that right. *See State v. Day*, 161 Wn.2d 889, 896, 168 P.3d 1265 (2007). Within this framework, "reasonableness does have a role to play" along with history, precedent, and common sense in defining both the broad privacy interests protected from disturbance, *id.* at 894; *see State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007), as well as the scope of disturbance that is or may be authorized by law, *see State v. Duncan*, 146 Wn.2d 166, 177, 178, 43 P.3d 513 (2002) ("[S]ociety will tolerate a higher level of intrusion for

a . . . higher crime than it would for a lesser crime."); *Day*, 161 Wn.2d at 897-98 & n.6 (holding that "legislative labeling" of a parking violation as a traffic offense could not justify a warrantless investigative stop for suspicion of that offense); *Snapp*, 174 Wn.2d at 194 (noting that the scope of an exception to the requirement of a warrant must be "delimited by its justifications"). Interference with the broad right to privacy can be legally authorized by statute or common law, but only insofar as is reasonably necessary to further substantial governmental interests that justify the intrusion. *See, e.g., State v. Valdez*, 167 Wn.2d 761, 775-77, 224 P.3d 751 (2009).

¶13 Warrantless disturbances of private affairs are subject to a high degree of scrutiny. We have explained that article I, section 7 protects " 'those privacy interests which the citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.' " *Ladson*, 138 Wn.2d at 349 (emphasis omitted) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)). Thus, if the right to privacy is implicated, we presume that a warrantless search or seizure violates article I, section 7 unless the State shows that the search or seizure falls "within certain 'narrowly and jealously drawn exceptions to the warrant requirement.' " *Day*, 161 Wn.2d at 894 (quoting *State v. Stroud*, 106 Wn.2d 144, 147, 720 P.2d 436 (1986), *overruled on other grounds by Valdez*, 167 Wn.2d 761); *see also Snapp*, 174 Wn.2d at 194 ("Recognized exceptions to the warrant [requirement] constitute authority of law . . . but only as carefully drawn and narrowly applied."). The categories of narrow exceptions recognized by this court include consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and investigative stops. *Duncan*, 146 Wn.2d at 171-72.

## 2. Legal Traffic Stops

¶14 Warrantless traffic stops are constitutional under article I, section 7 as investigative stops but only if

based upon at least a reasonable articulable suspicion of either criminal activity or a traffic infraction, and only if reasonably limited in scope. *See Ladson*, 138 Wn.2d at 350, 351-52 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)); RCW 46.61.021(2); *see also Snapp*, 174 Wn.2d at 197-98; *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010); *Day*, 161 Wn.2d at 896; *Duncan*, 146 Wn.2d at 173-74; *cf. State v. Nichols*, 161 Wn.2d 1, 13, 162 P.3d 1122 (2007) (warrantless traffic stop is constitutional if based upon probable cause that a traffic infraction occurred). The narrow exception to the warrant requirement for investigative stops has been extended beyond criminal activity to the investigation of traffic infractions because of " 'the law enforcement exigency created by the ready mobility of vehicles and governmental interests in ensuring safe travel, as evidenced in the broad regulation of most forms of transportation.' " *Day*, 161 Wn.2d at 897 (quoting *State v. Johnson*, 128 Wn.2d 431, 454, 909 P.2d 293 (1996)); *Duncan*, 146 Wn.2d at 174.

¶15 Traffic regulations governing vehicle exhaust systems not only ensure safe travel, they also promote the general welfare. *See* RCW 46.37.390(1) (regulating mufflers "to prevent excessive or unusual noise"). Vehicle exhaust regulations thus further substantial governmental interests and, due to the exigency created by vehicle mobility, justify warrantless investigative stops for purposes of enforcement.

¶16 The interest in privacy within an automobile remains substantial, however. *See City of Seattle v. Mesiani*, 110 Wn.2d 454, 456-57, 755 P.2d 775 (1988) ("From the earliest days of the automobile in this state, this court has acknowledged the privacy interest of individuals and objects in automobiles." (citing *State v. Gibbons*, 118 Wash. 171, 187, 203 P. 390 (1922))). The use of traffic stops must remain limited and must not encroach upon the right to privacy except as is reasonably necessary to promote traffic safety and to protect the general welfare through the enforcement of traffic regulations and criminal laws. Although traffic

stops are legally authorized for the investigation of traffic infractions or criminal activity, each such investigative stop must be justified at its inception and must be reasonably limited in scope—based on whatever reasonable suspicions legally justified the stop in the first place. *See Ladson*, 138 Wn.2d at 350.

### 3. Pretextual Traffic Stops

¶17 Pretextual traffic stops are unconstitutional under article I, section 7. *See Ladson*, 138 Wn.2d at 358; *see also Snapp*, 174 Wn.2d at 199; *Nichols*, 161 Wn.2d at 8-9. A pretextual traffic stop occurs when a police officer relies on some legal authorization as "a mere pretext to dispense with [a] warrant when the true reason for the seizure is not exempt from the warrant requirement." *Ladson*, 138 Wn.2d at 358. Because the right to privacy in such cases is disturbed without reasonable necessity and only in furtherance of some illegitimate purpose, pretextual stops "are seizures absent the 'authority of law' " required by article I, section 7. *Id.* (quoting CONST. art. I, § 7).

¶18 A pretextual traffic stop violates article I, section 7 because it represents an abuse of a police officer's wide discretion in determining the reasonable necessity of a traffic stop in a given case. It is commonly accepted that full enforcement of traffic and criminal laws by police officers is both impossible and undesirable. *See, e.g.*, DAVID E. AARONSON ET AL., PUBLIC POLICY AND POLICE DISCRETION: PROCESSES OF DECRIMINALIZATION vii-ix (1984); HOWARD ABADINSKY, DISCRETIONARY JUSTICE 8-9 (1984). As we recognized in *Ladson*, the traffic code is extensive and complicated and " 'virtually the entire driving population is in violation of some regulation as soon as they get in their cars, or shortly thereafter.' " *Ladson*, 138 Wn.2d at 358 n.10 (quoting Peter Shakow, *Let He Who Never Has Turned Without Signaling Cast the First Stone: An Analysis of* Whren v. United States, 24 AM. J. CRIM. L. 627, 633 (1997)); *see generally* ch. 46.16A

RCW ("Registration"); ch. 46.37 RCW ("Vehicle lighting and other equipment"); ch. 46.61 RCW ("Rules of the road"). Accordingly, police officers must exercise wide discretion in deciding which traffic rules to enforce, and when to enforce them, in furtherance of traffic safety and the general welfare; the same need for discretion is true of criminal law enforcement generally. *See* GEORGE L. KELLING, "BROKEN WINDOWS" AND POLICE DISCRETION v, 21-23 (1999) (numerous research studies have confirmed that "police work is complicated . . . and police use discretion throughout their work"); KENNETH CULP DAVIS, POLICE DISCRETION 76-77 (1975) (enforcement by police necessarily must be selective as to time, place, and relative importance of crimes). Given the complexity of police work and the fact that police departments serve varied communities with distinct needs and values, " 'courts are reluctant to substitute their judgment for that of police officers in the field.' " *Duncan*, 146 Wn.2d at 175 (quoting *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989)); *see* ABADINSKY, *supra*, at 53.

¶19 However, as we recognized in *Ladson*, pretextual stops by police officers represent an attempt to circumvent the important constitutional limits placed on police discretion in such cases. Again, warrantless traffic stops based on a reasonable suspicion of a traffic infraction are allowed *only* because such stops are reasonably necessary to enforce the traffic regulations suspected of being violated, in order to further the governmental interest in traffic safety and the general welfare; thus, police are afforded discretion to conduct such a traffic stop only because investigation of suspected traffic infractions may be reasonably necessary. Given the complicated nature of police work and the regulation of traffic in particular, police must exercise discretion in determining which traffic infractions require police attention and enforcement efforts. Yet in a pretextual traffic stop, a police officer has *not* properly determined that the stop is reasonably necessary in order to address any traffic infractions for which the officer has a reason-

able articulable suspicion; instead, the traffic stop is desired because of some other (constitutionally infirm) reason—such as a mere hunch regarding other criminal activity or another traffic infraction—or due to bias against the suspect, whether explicit or implicit. A pretextual stop thus disturbs private affairs without valid justification and is unconstitutional.

¶20 The misuse of traffic stops in furtherance of illegitimate purposes represents an enormous threat to privacy if left unchecked. The exercise of discretion by police officers in enforcing traffic regulations is extremely important in part because traffic enforcement is one of the most visible representations of government and, for most citizens, one of the primary ways that they will interact with the government. *See* KELLING, *supra,* at 16; ABADINSKY, *supra,* at 15; AARONSON, *supra,* at 50-51. In a pretextual traffic stop, a police officer disturbs the private affairs of an automobile's occupants without having first properly determined that a suspected traffic infraction actually merits police attention. In many cases, the occupants will be palpably aware of such an abuse of police discretion. Notably, a police officer's hunch or bias could be based on race or other suspect classifications, on various types of protected expression, or on other illegitimate factors. A police officer clearly abuses his or her discretion by engaging in a traffic stop because of any such grounds. In a pretextual stop, because privacy is violated based on an abuse of police discretion, article I, section 7 is violated.

¶21 Since *Ladson,* Washington courts have prohibited pretextual stops. We have instructed lower courts to "consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior," in determining whether a given stop was pretextual. *Ladson,* 138 Wn.2d at 359. This inquiry has not been toothless. *See, e.g., State v. Montes-Malindas,* 144 Wn. App. 254, 182 P.3d 999 (2008) (traffic stop was pretextual); *State v. Canaday,* noted at 123

Wn. App. 1026, 2004 WL 2095390, 2004 Wash. App. LEXIS 2162 (unpublished) (same); *State v. Capshaw*, noted at 118 Wn. App. 1020, 2003 WL 21964788, 2003 Wash. App. LEXIS 1834 (unpublished) (same); *State v. Myers*, 117 Wn. App. 93, 69 P.3d 367 (2003) (same).[1] Although there are concerns that some police officers will simply misrepresent their reasons and motives for conducting traffic stops, *cf.* SAMUEL WALKER, TAMING THE SYSTEM 45-46 (1993) (exclusionary rule led to increase in "number of officers claiming that the defendant had dropped the narcotics on the ground"), the possibility that police officers would engage in such wrongdoing only heightens the need for judicial review of traffic stops. Further, our test for pretext incorporates both an objective and a subjective component, *see Ladson*, 138 Wn.2d at 359, and officers are expected to adjust their practices to be consistent with the law, *cf.* WALKER, *supra*, at 15, 49-50 (some research "suggests that police officers [do] comply with restrictive rules"). Washington courts will continue to review challenged traffic stops for pretext.

## 4. *Mixed-Motive Traffic Stops*

 ¶22 This case now requires us to determine whether a mixed-motive traffic stop—that is, a traffic stop based on both legitimate and illegitimate grounds—is a pretextual stop in violation of article I, section 7. We hold that a traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop. In other words, despite other motivations or reasons for the stop, a traffic stop should not

---

[1] Consistent with GR 14.1(a), which prohibits parties from citing an unpublished opinion of the Court of Appeals *as an authority*, we cite to such unpublished opinions not as precedent but instead to show that, in practice, the *Ladson* test has been applied by our courts to weed out pretextual traffic stops. *Cf. Dahl-Smyth, Inc. v. City of Walla Walla*, 148 Wn.2d 835, 839 & n.4, 64 P.3d 15 (2003) (citing to unpublished opinion not as precedent but instead because it had influenced the proceedings below).

be considered pretextual so long as the officer actually and consciously makes an appropriate and independent determination that addressing the suspected traffic infraction (or multiple suspected infractions) is reasonably necessary in furtherance of traffic safety and the general welfare.

¶23 We have not previously addressed the legality of mixed-motive traffic stops. In *Ladson*, a police officer recognized a driver from "an unsubstantiated street rumor," then was " 'motivat[ed] in finding a legal reason to initiate the stop,' " and noticed that the car's license plate tabs were expired. 138 Wn.2d at 346. The trial court found that the investigating officer " 'selectively enforce[d] traffic violations *depending on* . . . the potential for intelligence gathering,' " and the officer admitted that the traffic stop challenged in that case was entirely pretextual. *Id.* (emphasis added). In other words, the officer's proffered legal justification for the stop—expired tabs—was admittedly "a *false* reason used to disguise a real motive." *Id.* at 359 n.11 (emphasis added) (quoting Patricia Leary & Stephanie Rae Williams, *Toward a State Constitutional Check on Police Discretion to Patrol the Fourth Amendment's Outer Frontier: A Subjective Test for Pretextual Seizures*, 69 TEMP. L. REV. 1007, 1038 (1996)). The officer in *Ladson* would not have conducted the stop had there been no street rumor, and the officer abused his discretion by conducting the stop without deeming it reasonably necessary to enforce license plate tab regulations. In contrast, the trial court in this case found that Chacon's exhaust infraction was an actual reason for the stop and also that Officer Valdivia would have stopped Chacon for the exhaust infraction even without the previous DUI report. Thus, unlike the stop in *Ladson*, the stop in this case was a mixed-motive stop.

¶24 A mixed-motive stop does not violate article I, section 7 so long as the police officer making the stop exercises discretion appropriately. Thus, if a police officer makes an independent and conscious determination that a traffic stop to address a suspected traffic infraction is reasonably nec-

essary in furtherance of traffic safety and the general welfare, the stop is not pretextual. That remains true even if the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason that is insufficient to justify a stop. In such a case, the legitimate ground is an independent cause of the stop and privacy is justifiably disturbed due to the need to enforce traffic regulations, as determined by an appropriate exercise of police discretion. Any additional reason or motivation of the officer does not affect privacy in such a case, nor does it interfere with the underlying exercise of police discretion because the officer would have stopped the vehicle regardless. The trial court should consider the presence of an illegitimate reason or motivation when determining whether the officer really stopped the vehicle for a legitimate and independent reason (and thus would have conducted the traffic stop regardless). But a police officer cannot and should not be expected to simply ignore the fact that an appropriate and reasonably necessary traffic stop might also advance a related and more important police investigation. *Cf. Nichols*, 161 Wn.2d at 11 (" '[E]ven patrol officers whose suspicions have been aroused may still enforce the traffic code . . . .' " (quoting *State v. Minh Hoang*, 101 Wn. App. 732, 742, 6 P.3d 602 (2000)). In such a case, an officer's motivation to remain observant and potentially advance a related investigation does not taint the legitimate basis for the stop so long as discretion is appropriately exercised and the scope of the stop remains reasonably limited based on its lawful justification.

¶25 A trial court's consideration of a challenge to an allegedly pretextual traffic stop should remain direct and straightforward. The trial court should consider both subjective intent and objective circumstances in order to determine whether the police officer actually exercised discretion appropriately. The trial court's inquiry should be limited to whether investigation of criminal activity or a

traffic infraction (or multiple infractions), for which the officer had a reasonable articulable suspicion, was an actual, conscious, and independent cause of the traffic stop. The presence of illegitimate reasons for the stop often will be relevant to that inquiry, but the focus must remain on the alleged legitimate reason for the stop and whether it was an actual, conscious, and independent cause.

¶26 In this case, Officer Valdivia testified that he made a conscious decision to pull over the vehicle for the muffler violation. The trial court's unchallenged finding was that Chacon's muffler infraction was "an actual reason for the stop" and that Officer Valdivia "would have stopped the vehicle . . . even if he wasn't suspicious of a DUI, and even though his primary purpose for stopping the vehicle was to further investigate a possible DUI." CP at 48. In sum, Officer Valdivia had a reasonable articulable suspicion that Chacon was violating RCW 46.37.390 and decided that a traffic stop was reasonably necessary to address that suspected traffic infraction and to promote traffic safety and the general welfare. The fact that Officer Valdivia was also interested in and motivated by a related investigation is irrelevant, even if that investigation could not provide a legal basis for the traffic stop. *Cf. State v. Lesnick*, 84 Wn.2d 940, 530 P.2d 243 (1975) (anonymous tip without indicia of reliability insufficient for a traffic stop). Because the suspected traffic infraction was an actual, conscious, and independent cause of the traffic stop, the trial court was correct in concluding that the stop was not pretextual.

## IV. CONCLUSION

¶27 We reverse the Court of Appeals and uphold the trial court's conclusion that the traffic stop in this case was constitutional. A traffic infraction, about which the officer had a reasonable, articulable suspicion, was an actual, conscious, and independent cause of the traffic stop in this

case. Thus, there was no abuse of police discretion and no pretext. Chacon's conviction is hereby reinstated.

C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, and WIGGINS, JJ., concur.

MADSEN, C.J., concurs in the result only.

¶28 CHAMBERS, J. (dissenting) — A traffic stop without authority of law violates our constitution. *See* CONST. art. I, § 7. In *State v. Ladson*, 138 Wn.2d 343, 352-53, 979 P.2d 833 (1999), we held that commission of a traffic offense cannot justify a seizure that would not otherwise be permitted absent the authority of law our constitution requires. We explained that "the problem with a pretextual traffic stop is that it is a search or seizure which cannot be constitutionally justified for its true reason (i.e., speculative criminal investigation), but only for some other reason (i.e., to enforce traffic code) *which is at once lawfully sufficient but not the real reason.*" *Id.* at 351 (emphasis added). The majority in this case now holds a stop is not pretextual even if the officer's primary reason for stopping a car is to conduct a speculative investigation as long as the secondary, lawfully sufficient reason is independent of the primary reason. Majority at 297-98. The majority does not offer any convincing means of distinguishing a "primary" reason from a "real" reason. Because I do not believe the spirit of *Ladson* will survive the court's opinion in this case, I dissent.

¶29 In the present case, an officer admitted his primary reason for stopping a car was to conduct a speculative criminal investigation—that is, to check for intoxication despite having no constitutionally permissible basis for doing so. The officer noticed, after following the car he wished to stop for a half mile or so, that its exhaust system was not in compliance with traffic regulations. The officer claims at that point he made a conscious and independent

decision to pull the vehicle over for the tailpipe violation. It is uncontested that the officer's primary reason for the stop was unconstitutional. He does not deny the primary reason for pulling the vehicle over was to conduct an investigation without authority of law. But the majority asserts this primary motivation does not matter as long as there was an independent secondary justification for the stop. This reasoning is for all practical purposes indistinguishable from the reasoning this court rejected in *Ladson*.[2]

¶30 Going forward, police officers in Washington will be free to stop citizens *primarily* to conduct an unconstitutional speculative investigation as long as they can claim there was an independent secondary reason for the seizure. I do not believe such a result comports with our holding in *Ladson* or with article I, section 7's command that "[n]o person shall be disturbed in his private affairs . . . without authority of law." I respectfully dissent.

STEPHENS, J., concurs with CHAMBERS, J.

---

[2] The majority notes that the officers in *Ladson* admitted to the purely pretextual nature of the stop. But it is likely the officers in *Ladson* freely admitted the stop was pretextual because a purely pretextual stop was and still is permissible under federal law, and we had not yet decided *Ladson*. *See Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).