# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON , | ) | No. 70015-4-I |
|  | ) |  |
| Respondent/ | ) | DIVISION ONE |
| Cross Appellant, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| LOUIS MONROE TRENARY, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant/ | ) | FILED: August 25, 2014 |
| Cross Respondent. | ) |  |
|  | ) |  |

Cox, J. — Louis Trenary appeals his conviction for identity theft and forgery. Because the traffic stop of the car driven by Trenary was based on probable cause and not pretextual, the trial court properly denied his motion to suppress the evidence seized from the car. We affirm.

Around 10:30 p.m. on March 16, 2012, Detective William Koonce and Detective Zachariah Olesen were on patrol when they observed a car driven by Trenary make a turn without signaling properly. Both Detective Koonce and Detective Olesen are members of the Lynnwood Police Department's Special Operations unit. It is tasked primarily with intelligence gathering and other crime prevention activities, but also conducts routine patrol activities like traffic stops.

Detective Koonce activated his lights to signal Trenary to stop. After Detective Koonce made the decision to stop the car but before the car came to a

complete stop, he learned the car was registered to Crystal Nelson, whom he had investigated on prior occasions for drug activity.

When Detective Koonce approached Trenary and requested identification, Trenary claimed he did not have his identification with him and gave a false name. After being instructed to give his true identity, he gave another false name. The officer arrested Trenary for failing to cooperate. A subsequent search of the car revealed evidence on which the State based charges against Trenary for two counts of identity theft and one count of forgery.

Trenary moved to suppress the evidence pursuant to CrR 3.6, claiming the lack of probable cause to stop the car and that the stop was merely a pretext to investigate suspected criminal activity. In addition to the testimony of Detective Koonce and Detective Olesen, the court reviewed a video recorded by the patrol car's dashboard video system. The video showed Trenary approaching a four-way stop. Trenary's right turn signal flashed for approximately one second, then went off. Approximately five seconds later, the right turn signal again flashed for approximately one second, then went off. Trenary slowed but did not come to a complete stop at the intersection. Approximately seven seconds later, as Trenary completed a right turn, the right turn signal again flashed briefly. The officers activated their emergency lights. As Trenary pulled onto the shoulder, his turn signal flashed continuously, showing it was functioning properly.

The court denied the motion and made the following findings of fact:

1. On 3/16/2012, Detective's [sic] Koonce and Olesen of the Lynnwood PD special ops were driving in their semi marked patrol car.
2. There was no logo on the vehicle, but there is a spotlight.
3. Both detectives were wearing plain clothes and were not in uniform.
4. Around 10:30 p.m., the Detectives were driving behind the defendant's car.
5. The defendant's vehicle signal came on, then went off, came on again, then went off again.
6. After it had been turned off, the defendant made a right turn.
7. The signal may have come on as the turn was being made indicating that the signal was working properly.
8. Though there was testimony that the defendant's vehicle also crossed over the centerline [sic], this is not shown on the dash-cam video.
9. Before the car is pulled over, Detective Olesen became aware that the car was registered to Crystal Nelson.
10. Though Crystal Nelson has prior police contacts for narcotics, she was not being investigated at that time.
11. There was no reason to believe that the vehicle or its occupants were involved in any kind of drug activity prior to the stop.
12. The car was pulled over for a traffic infraction.[1]

The court also made the following conclusions of law:

1. There was probable cause to stop the vehicle for a valid traffic infraction under RCW 46.61.305.
2. The officers were proactively looking to address criminal activity.
3. Given the information, it was a mixed-motive stop under State v. Arreola.[2]
4. Here, because the testimony is that Detective Koonce already made up his mind to stop the vehicle prior to finding out it belonged to Crystal Nelson, the decision to stop the vehicle for the traffic infraction was independent from any

---

[1] Clerk's Papers at 185-86.
[2] 176 Wn.2d 284, 288, 290 P.3d 983 (2012).

knowledge that the vehicle belonged to a known narcotics individual.

5.	A traffic stop was necessary in order to address the driving that was witnessed by the officers.

6.	The stop was not pre-textual.[3]

A jury found Trenary guilty as charged. Trenary appeals.

## PROBABLE CAUSE

Trenary challenges the court's denial of his motion to suppress. He argues that "the totality of the circumstances demonstrated his substantial compliance" with RCW 46.61.305 and therefore the officers lacked reasonable suspicion that a traffic violation occurred. We disagree.

As a general rule, warrantless searches and seizures are per se unreasonable.[4] But a warrantless seizure is valid if it falls within the scope of one of the narrowly drawn exceptions to the warrant requirement.[5] The State bears the burden of proving that a warrantless seizure falls within an exception to the warrant requirement.[6]

Law enforcement officers may conduct a warrantless traffic stop if they have a reasonable and articulable suspicion that a traffic violation has occurred or is occurring.[7] But officers may not use the traffic stop as a pretext to conduct a criminal investigation unrelated to driving for which reasonable suspicion is

---

[3] Clerk's Papers at 186.
[4] State v. Ladson, 138 Wn.2d 343, 349, 979 P.2d 833 (1999).
[5] Id. at 349-50.
[6] Id. at 350.
[7] Id. at 349.

lacking.[8] Pretextual traffic stops violate article I, section 7, of the Washington constitution "because they are seizures absent the 'authority of law' which a warrant would bring."[9] When determining whether a stop is pretextual, courts consider the totality of the circumstances, including "both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior."[10]

The trial court's findings of fact are reviewed for substantial evidence.[11] Unchallenged findings of fact are verities on appeal.[12] We review de novo conclusions of law, such as whether a stop is pretextual.[13]

RCW 46.61.305 provides:

(1) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

(2) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

Trenary contends that his method of signaling did not violate RCW 46.61.305(2). He argues that the statute does not define "continuously" and does not "regulate the interval or frequency during which the light is required to flash, nor does it

---

[8] Id.
[9] Id. at 358.
[10] Id. at 358-59.
[11] State v. Martinez, 135 Wn. App. 174, 179, 143 P.3d 855 (2006) (citing State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994)).
[12] State v. Luther, 157 Wn.2d 63, 78, 134 P.3d 205 (2006).
[13] Arreola, 176 Wn.2d at 291.

specifically regulate the interval between illuminations." Without evidence of a traffic violation, Trenary argues that the stop was illegal.

The question is whether the officers had probable cause to make the stop. Trenary admits that when making a turn drivers must use "electric turn signals which shall indicate an intention to turn by flashing lights . . . ."[14] It is clear from the language of the statute that it is the "flashing" that must occur "continuously" to notify other drivers of the intention to turn. A nontechnical term left undefined in a statute is given its plain and ordinary meaning, as defined in a standard dictionary.[15] "Continuous" is defined as "stretching on without break or interruption."[16] When Trenary repeatedly turned his turn signal on and off before initiating a turn, this did not constitute signaling "continuously" within the plain meaning of the word. The officers had probable cause to stop Trenary for violating RCW 46.61.305(2).

## PRETEXT

Trenary next contends that the stop was pretextual. But Trenary's claim is not supported by the record. Though Trenary does not articulate why he believes the stop was pretextual, we presume it was because the officers were members of a special unit that proactively investigates crime and who had discovered that Trenary was driving a car belonging to an individual with

---

[14] RCW 46.37.200(2).
[15] State v. Sullivan, 143 Wn.2d 162, 174-75, 19 P.3d 1012 (2001).
[16] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 493-94 (1993).

connections to drug activity. But the officers testified that in addition to their investigative duties they were also responsible for routine law enforcement activities, including traffic stops. Furthermore, the officers made the decision to stop Trenary as soon as they witnessed the traffic violation. The decision to stop Trenary occurred before the officers learned that Trenary was driving Nelson's car.

Even if the detectives were motivated by a desire to investigate suspected drug involvement, the stop was not pretextual. As the court concluded, the stop was a "mixed-motive" stop; in other words, one that is "based on both legitimate and illegitimate grounds."[17] A mixed-motive stop does not violate article I, section 7 "so long as the police officer making the stop exercises discretion appropriately."[18]

> Thus, if a police officer makes an independent and conscious determination that a traffic stop to address a suspected traffic infraction is reasonably necessary in furtherance of traffic safety and the general welfare, the stop is not pretextual. That remains true even if the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason that is insufficient to justify a stop. In such a case, the legitimate ground is an independent cause of the stop, and privacy is justifiably disturbed due to the need to enforce traffic regulations, as determined by an appropriate exercise of police discretion. Any additional reason or motivation of the officer does not affect privacy in such a case, nor does it interfere with the underlying exercise of

---

[17] Arreola, 176 Wn.2d at 297.
[18] Id. at 298.

police discretion because the officer would have stopped the vehicle regardless. [19]

Here, the officers had reason to believe that Trenary had violated RCW 46.61.305(2) and that a traffic stop was reasonably necessary to address the suspected traffic infraction and to promote traffic safety and the general welfare. The fact that the officers may also have been interested in Trenary's connections to Nelson does not render the stop pretextual in light of the independent legitimate basis for the stop.

Because the stop was lawful, the evidence obtained from the stop was admissible. Therefore, the trial court properly denied Trenary's CrR 3.6 motion to suppress.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

---

[19] Id. at 298-99.