IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32270-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSHUA JOHN EDWARDS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — After the trial court denied Joshua Edwards's CrR 3.6

motion to dismiss, a jury found him guilty of unlawful possession of a firearm, unlawful

possession of a dangerous weapon, and making a false or misleading statement to a public

servant. On appeal, Mr. Edwards contends that the trial court erred because the facts

establish that the vehicle's license plate was illuminated, and the officer's stop of the

vehicle was pretext. We defer to the factual findings of the trial court and affirm.

FACTS

On the evening of December 15, 2013, at approximately 10:00 p.m., Officer

Wayne Walls of the Colville Police Department was in the Colmac Oil parking lot

completing some paperwork while on traffic and patrol duty. From the parking lot,

Officer Walls observed Mr. Edwards traveling northbound on Lincoln in a vehicle. Mr. Edwards was a couple hundred feet away when Officer Walls first observed him. Officer Walls stopped Mr. Edwards because he believed Mr. Edwards's license plate illumination lights were not working.

Officer Walls executed the traffic stop at 10:08 p.m. He then walked up to the vehicle and asked Mr. Edwards to identify himself. Mr. Edwards responded that he did not have a driver's license. He then gave Officer Walls a false name. Because Officer Walls was not able to make a positive identification based on this information, he arrested Mr. Edwards for not having a valid operator's license. The vehicle Mr. Edwards was driving, a 2004 Ford F-150 pickup truck, is owned by Travis McDaniel, a friend of Mr. Edwards.

After placing Mr. Edwards in handcuffs, Officer Walls searched Mr. Edwards's pockets and discovered a .22 caliber North American Arms Derringer pistol and a folding knife with metal knuckles. Officer Walls removed these items from Mr. Edwards's person and then placed Mr. Edwards in the patrol car to transport him to the Stevens County Jail.

Mr. Edwards was charged with unlawful possession of a firearm, unlawful possession of a dangerous weapon, and making a false or misleading statement to a public

servant. He moved to suppress the evidence found during the search incident to arrest. He contended that the license plate lights were functioning at the time of the traffic stop and, thus, he was unlawfully seized because Officer Walls's stop was pretextual.

Officer Walls testified at the CrR 3.6 suppression hearing that the vehicle's license plate illumination lights were not working as it passed the Colmac parking lot. He stated he immediately pulled out of the parking lot and initiated a traffic stop based on this observation. He admitted he never told Mr. Edwards why he initiated the traffic stop. He said he often makes traffic stops for license plate illumination lights that are not working. Additionally, he stated he did not recognize the vehicle or the driver before or during the traffic stop. Finally, he indicated that the license plate lights were not working the entire time he was following the vehicle.

To support Mr. Edwards's contentions on the motion to suppress, the defense introduced evidence and provided testimony from four witnesses, including Mr. Edwards. Daniel Edwards, Mr. Edwards's father, testified that he noticed the license plate illumination lights working when he was a passenger in the truck until 8:30 or 9:00 p.m. on December 15, 2013. Daniel Edwards also stated that he always checks the lights on vehicles.

Mr. McDaniel testified that the license plate illumination lights were working on his truck four days before Mr. Edwards's arrest. He stated they were also working one and one-half days after the arrest when he recovered his truck from the parking lot it had been in since the traffic stop. On cross-examination, Mr. McDaniel revealed that he had spoken with Mr. Edwards while Mr. Edwards was in jail. Mr. McDaniel admitted that in a call on December 21, 2013, he told Mr. Edwards that he had forgotten the gun was in the truck, he would testify on Mr. Edwards's behalf that it was his gun, and Mr. Edwards did not know the gun was in the truck. He also admitted that he had talked with Mr. Edwards again the night before the suppression hearing and discussed the issue of the truck's lights, saying he had met with the defense investigator to check the lights at the tow yard like Mr. Edwards had asked him to do.

Additionally, an investigator for the defense, Ronald Goodbrake, testified that he examined the truck on January 30, 2014, in Davis Towing's holding lot where it had been since being wrecked on January 26, 2014. He stated the license plate lights were working during his examination. While Mr. Goodbrake was on the witness stand, the defense also introduced a video recording of the Wal-Mart parking lot in Colville on December 15, 2013. The video shows the truck that Mr. Edwards was driving the night of the traffic stop entering the Wal-Mart parking lot at 8:07 p.m. and leaving at 8:38 p.m. The video

4

also shows the license plate illumination lights came on when the truck's headlights were activated at 8:38 p.m.

The trial court denied the motion to suppress. The court found that Officer Walls was a credible witness. The court also found that none of the evidence presented by the defense regarding the license plate lights being illuminated before and after the stop was dispositive to prove that the lights were in fact illuminated at the time of the stop. The court stated it was "incredible" and "somewhat unusual behavior" for Mr. Edwards and his father to check the license plate lights several times the night of the traffic stop and arrest. Report of Proceedings (RP) at 142. Instead, the court found that their statements about checking the lights that night "seem[] to be a response to the basis for the stop, rather than a—reasonable way of—of looking at—at a vehicle." RP at 143. Finally, the court found that Mr. McDaniel "has some sort of dog in this fight" based on the testimony about his conversations with Mr. Edwards from jail about assuming responsibility for the firearm and about the license plate lights. RP at 142. The court ultimately concluded the traffic stop was not pretextual because "[t]here has to be another reason that the officer's making the stop," and "without any knowledge of the individual or the vehicle, the entire purpose of a pretext stop seems . . . to be eviscerated." RP at 143-44.

5

At trial, the jury convicted Mr. Edwards of the crimes charged. Mr. Edwards appeals. He contends that the trial court erred by failing to suppress the evidence discovered as a result of an unlawful seizure and search.

## ANALYSIS

"When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence is evidence that is "enough 'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). Conclusions of law from an order related to the suppression of evidence are reviewed de novo. *Id.*

As a preliminary note, CrR 3.6(b) requires a trial court to enter written findings if an evidentiary hearing is conducted on a motion to suppress. However, generally, the trial court's failure to enter written findings of fact and conclusions of law is harmless if the record is sufficient for appellate review. *State v. Miller*, 92 Wn. App. 693, 703, 964 P.2d 1196 (1998). Here, the trial court only entered oral findings, which are somewhat confusing. However, Mr. Edwards only raised the issue in a footnote in his brief on appeal to say that the record does not include any written findings as to the suppression

6

hearing. He did not argue the issue or request that this court remand for entry of written findings. Additionally, while written findings certainly would have made it easier to decipher the trial court's ruling, the oral findings were sufficient as to the necessary legal issues.

Turning to the substantive analysis, generally, "warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution." *Garvin*, 166 Wn.2d at 249. However, a few narrowly drawn exceptions to this general rule exist, including "exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and *Terry*[1] investigative stops." *Id.* The State bears the burden of proving by clear and convincing evidence that a warrantless seizure fits within one of these categories of exceptions to the warrant requirement. *Id.* at 250.

Routine traffic stops have been categorized with investigative detentions, which are subject to *Terry*'s reasonableness requirements. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). A law enforcement officer may conduct a warrantless traffic stop when he has a reasonable and articulable suspicion that a traffic violation has occurred or is occurring. *Id.* at 349.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

7

But where the asserted basis for a traffic stop is a pretext for a warrantless investigation, the stop violates article I, section 7 of the Washington Constitution. *Id.* at 358. A traffic stop is pretextual if "police are pulling over a citizen, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving," for which the police lack a warrant. *Id.* at 349. To determine whether a stop is pretextual, courts consider the totality of the circumstances, including "the subjective intent of the officer [and] the objective reasonableness of the officer's behavior." *Id.* at 359. "[C]oncerns that some police officers will simply misrepresent their reasons and motives for conducting traffic stops . . . only heightens the need for judicial review of traffic stops." *State v. Arreola*, 176 Wn.2d 284, 297, 290 P.3d 983 (2012). If the court finds the stop is pretextual, "all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *Ladson*, 138 Wn.2d at 359.

Here, the totality of the circumstances demonstrates that Officer Walls's stop of Mr. Edwards was not pretextual. Officer Walls was actually motivated, both subjectively and objectively, by the need to address the traffic violation rather than by some other investigative purpose. The trial court did not err in concluding that the traffic stop of Mr. Edwards was not a pretext and, therefore, was a lawful seizure.

8

The court's findings are supported by the evidence. At the suppression hearing, Officer Walls testified that he was on traffic and patrol duty the evening of December 15, 2013. He testified that he first saw Mr. Edwards as Mr. Edwards drove by only a couple hundred feet away from where he was parked. Officer Walls stated that he had never seen Mr. Edwards or the vehicle Mr. Edwards was driving before that moment. He also testified that the only reason he stopped Mr. Edwards was because he observed the license plate lights were not working on the vehicle Mr. Edwards was driving. Finally, Officer Walls testified that he often looks for license plate lights that are not working and makes stops based on that traffic infraction. These facts are not the facts of a pretext stop.

The trial judge had the opportunity to listen to and observe the demeanor of Officer Walls and of the four defense witnesses at the CrR 3.6 hearing. As detailed above in the facts section, the trial court found that Officer Walls was a credible witness. The court also found that the evidence presented by the defense was not dispositive to prove that the lights were in fact illuminated at the time of the stop. The court stated it was "incredible" and "somewhat unusual behavior" for the defendant and his father to check the license plate lights several times the night of the traffic stop and arrest. RP at 142. Finally, the court commented that Mr. McDaniel "has some sort of dog in this fight."

9

RP at 142. These findings are supported by substantial evidence in the record.

The trial court concluded that no improper reason for the stop existed and, therefore, there was no basis for finding the stop was pretextual. The court's findings support this conclusion. Officer Walls conducted a warrantless traffic stop based on a reasonable suspicion that Mr. Edwards committed a traffic violation after he saw Mr. Edwards driving a vehicle with license plate lights that were not illuminated. No other improper reason for the stop was presented at the suppression hearing. Thus, the trial court did not err in denying the defense's motion to suppress.

The trial court properly denied Mr. Edwards's motion to suppress evidence found in the resulting search incident to arrest. The traffic stop of Mr. Edwards was not a pretext and, therefore, was a lawful seizure.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Brown, A.C.J.

Korsmo, J.

10