IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35704-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC LEON OLSEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Eric Olsen appeals from his conviction for possession of heroin, arguing that the heroin was improperly seized as part of a pretext traffic stop. We affirm the conviction, but direct that the trial court strike the criminal filing fee.

FACTS

Officer Gunner Fulmer of the Walla Walla Police Department was on patrol October 29, 2016 along with a drug detection dog. One of Fulmer's duties was to patrol areas known for drug activities. He routinely conducted surveillance of the house of Donnie Demaray. On the 29th, he saw an unknown, and unoccupied, Subaru Outback outside of Demaray's residence.

Upon running the license plate number, Fulmer learned that the license tabs were expired. He later drove past Demaray's house and observed that the Subaru had

departed. Through his computer, Fulmer asked other officers if they were familiar with the car and also advised them that the car's tabs were expired. He did not request a traffic stop of the vehicle.

About 1:30 p.m. that day, Walla Walla Officer Paul Green saw the Subaru driving and realized that it had both 2016 and 2017 tabs on its plates, but had no month tab displaying. He ran a records check and discovered that the vehicle's registration had expired. He then effected a stop of the vehicle, which was driven by Eric Olsen. Olsen did not have his driver's license with him.

Upon hearing of the traffic stop, Officer Fulmer went to the scene and talked to Olsen while Green was writing traffic tickets. He engaged Olsen in conversation concerning his visit to Demaray's house. Fulmer expressed disbelief at Olsen's story that he had smoked marijuana with Demaray, a known heroin user. Fulmer asked Olsen for consent to search the car, indicating that he would deploy his drug detection dog if there was no consent. Olsen told the officer that he had heroin and a syringe in the car. He consented to a search of the car after first being told that he did not need to consent and could limit or revoke his consent.

The officer recovered heroin and two syringes; the dog was never employed in the search. Charges of possession of heroin and use of drug paraphernalia were filed. Mr. Olsen's counsel moved to suppress, arguing that Green's traffic stop was a pretext in order to allow Fulmer to search for drugs. The trial court heard the motion and denied it,

2

entering findings that Green would have conducted the traffic stop even without knowing where the car earlier had been seen and that Fulmer's contact with Olsen did not extend the time Green took to conduct his investigation and issue the traffic tickets.

Mr. Olsen then consented to a stipulated trial. The court found him guilty as charged and timely entered all required findings. Mr. Olsen then timely appealed to this court, arguing that the suppression motion should have been granted. By supplemental brief, he was allowed to challenge the court's imposition of a $200 filing fee.

ANALYSIS

Mr. Olsen first argues that the suppression ruling was erroneous. He both attempts to distinguish this case from *State v. Arreola*, 176 Wn.2d 284, 290 P.3d 983 (2012), and, alternatively, argues that we should not follow that decision. He also argues that the filing fee should be struck due to his indigency. Finding *Arreola* indistinguishable, we affirm the conviction, but grant the request to strike the filing fee.

*Suppression Ruling*

The trial court's findings are supported by the evidence and justify its conclusions of law. Accordingly, we affirm.

Appellate courts review de novo the trial court's conclusions of law pertaining to a motion to suppress. *Arreola*, 176 Wn.2d at 291. We review the factual findings for "substantial evidence." *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

"Substantial evidence" is evidence sufficient to convince a fair-minded person of the truth of the finding. *Id*. at 644.

Pretextual stops are prohibited by art. I, § 7, of the Washington Constitution. *Arreola*, 176 Wn.2d at 294. Pretextual stops occur when an officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to enforcement of the traffic code. *State v. DeSantiago*, 97 Wn. App. 446, 451, 983 P.2d 1173 (1999). "'When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior.'" *Id*. at 452.

In *Arreola*, an officer had received a tip about a suspected impaired driver. Finding the suspect vehicle, the officer did not see any signs of impairment, but did see a violation related to the vehicle's exhaust system and stopped the car. 176 Wn.2d at 288-289. The trial court determined that the primary reason for the stop was to investigate the tip, but that was not the officer's sole reason for the stop, noting the muffler violation. *Id*. at 289. The Washington Supreme Court affirmed the trial court, holding that "a mixed-motive traffic stop is not pretextual so long as the desire to address a suspected traffic infraction (or criminal activity) for which the officer has a reasonable articulable suspicion is an actual, conscious, and independent cause of the traffic stop." *Id*. at 288.

Here, Mr. Olsen challenges findings of fact 1, 2, and 4. Those findings indicate that Officer Green had a lawful basis to stop the car due to the expired registration, Green

4

would have conducted the stop regardless of Officer Fulmer's earlier observations, and Fulmer did not detain Olsen beyond the scope of Green's stop. The evidence supports those findings. Upon seeing the Subaru, Green observed different licensing violations than that reported by Fulmer. Green then investigated the vehicle registration before making the traffic stop. Fulmer did not ask any officer to stop the Subaru. Fulmer then responded to the scene and questioned Olsen about Demaray before lawfully obtaining consent to search. Green's investigation was still ongoing; it was not extended by Fulmer's questioning of Olsen.

In short, the evidence allowed the trial court to make the findings that it did. Those findings support the trial court's conclusions of law. Unlike *Arreola*, the trial court here did not determine that Green had a second motive for stopping Olsen. On that basis, alone, the motion to suppress necessarily failed. But, even if the fact that Mr. Olsen can postulate an additional motive were sufficient to make this a mixed case, *Arreola* disposes of that contention. The trial court found that a valid basis for the stop existed. The possibility that an invalid basis existed does not invalidate the valid reason for the stop.

Recognizing his problem, Mr. Olsen also argues that *Arreola* was wrongly decided and should not be followed. However, this court is required to follow that case. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) (lower courts are bound by ruling of

5

No. 35704-0-III
*State v. Olsen*

Washington Supreme Court). He must address his claim to the Washington Supreme Court.

The trial court did not err in denying the motion to suppress.

*Criminal Filing Fee*

Mr. Olsen argues that the trial court lacked authority to impose the criminal filing fee due to his indigency. Due to an intervening change in the law, we agree. *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). On the basis of *Ramirez*, we direct the trial court to strike the criminal filing fee.

Affirmed and remanded to strike the filing fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Pennell, A.C.J.

Siddoway, J.

6