IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80598-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROGER ALLEN HILLS, JR., | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Roger A. Hills, Jr. was charged with several felonies after law enforcement stopped the vehicle he was a passenger in. The officers claimed the stop was based on an inoperable license plate light, as opposed to their proactive patrol of high crime and drug trafficking areas. Hills brought a CrR 3.6 motion to suppress, arguing the traffic stop was pretextual. The trial court denied the motion and the case proceeded to a bench trial at which Hills was convicted as charged. Hills avers the trial court erred in denying his CrR 3.6 motion. We agree and reverse.

FACTS

Roger A. Hills, Jr. was a passenger in a 2007 Mercedes driving on Broadway in Everett at approximately 10 p.m. on February 20, 2019. While driving in the opposite direction, Everett Police Officers Anatoliy Kravchun and Oleg

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

Kravchun[1] claim they were able to observe that the rear license plate light was out when the Mercedes turned left in front of them. The Kravchuns were on patrol that evening pursuant to their assignment to the Everett Police Department "Anti-Crime Team" (ACT) which is tasked with proactive patrol of "problem places and problem people." The officers observed the vehicle turn into the parking lot of the Motel Express, a location associated with a high number of drug sales within Everett's "stay-out-of-drug-area"[2] (SODA). The officers stopped the Mercedes in the hotel parking lot and pulled their patrol car up directly behind it. The officers claimed they stopped the vehicle purely because the license plate light was not functional.

Both officers approached the Mercedes, one on each side of the vehicle. Anatoliy spoke with the driver and requested identification. At the same time, Anatoliy utilized his flashlight to look into the vehicle and noticed a plastic zip-type baggie with brown residue sitting on the console between the driver and front passenger seat. When Anatoliy asked what the bag was, the driver handed it to the officer. Anatoliy suspected the bag contained drug residue. While the Kravchuns were engaged with the driver and Hills, Officer Gregory Mueller arrived. Mueller was also assigned to the ACT and patrolling nearby when he heard over the radio that the Kravchuns were making a stop for a traffic infraction.

The officers then detained the driver and Hills for possession of drug paraphernalia.[3] When Hills was identified pursuant to the detention, officers

---

[1] In addition to patrolling as partners on the night of this incident, Officers Kravchun are brothers. For clarity, we refer to them by their first names when describing their individual actions.

[2] The area has been deemed such by the Everett Municipal Court and is known to local law enforcement as SODA zone.

[3] Both Oleg and Anatoliy testified the occupants were detained "for possession of drug paraphernalia." Possession of drug paraphernalia is not a crime under state law. RCW 69.50.412(1)

learned that he had an active Department of Corrections (DOC) warrant and arrested him on that basis. Hills was searched incident to arrest and officers discovered a digital scale, small amount of cash, and sixteen baggies of suspected heroin on his person. The officers also located a backpack containing a large quantity of suspected methamphetamine on the floor of the passenger compartment where Hills had been seated in the vehicle.

The State initially charged Hills with two counts of possession of a controlled substance with intent to deliver, two counts of possession of a controlled substance, and one count of violation of community custody. The drug charges carried special allegations that the conduct occurred while Hills was on community custody. Hills brought a CrR 3.6 motion to suppress, arguing the traffic stop was a pretext. Both officers Kravchun testified at the hearing, as did Mueller. After argument, the court reserved ruling on the motion and asked both sides to submit proposed findings of fact and conclusions of law. Three weeks after the hearing, the court signed the State's proposed written findings and conclusions, without modification, which deemed the stop legal.

Hills proceeded to a bench trial on the State's second amended information which accused him of one count each of possession of a controlled substance and possession of a controlled substance with intent to deliver, both with the community custody allegation, and one count of violation of community custody.

---

prohibits use of drug paraphernalia and RCW 69.50.412(2) prohibits possession with intent to deliver paraphernalia. (Emphasis added). Both are designated as gross misdemeanor crimes.

While Everett Municipal Code 10.35.020 is titled "Possession of drug paraphernalia," its plain language only prohibits the "use, or possess[ion] with intent to use" drug paraphernalia. Either act is deemed a simple misdemeanor.

The record is unclear whether the driver and Hills were detained under state law or the municipal code as neither was cited for this alleged offense.

He was convicted on all three charges.[4]  He was sentenced to 100 months in prison, followed by 12 months of community custody supervision.  Hills appeals, arguing the court erred in denying his motion to suppress based on a pretext stop.

ANALYSIS

When reviewing a motion to suppress, this court reviews conclusions of law de novo.  State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).  We review challenged findings of fact for substantial evidence in the context of a motion to suppress.  Id.  "Substantial evidence is 'evidence sufficient to persuade a fair-minded, rational person of the truth of the findings.'"  Id. (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).  Here, Hills challenges the court's denial of his motion to suppress generally and specifically assigns error to multiple findings of fact.

We first look to the findings of fact challenged by Hills and review them for substantial evidence.  Findings of fact 3, 5, 6, and 7 are all centered on the purpose, scope, and function of the ACT team and the Kravchuns' assignment on the date of the incident.  The testimony of Mueller and the Kravchuns at the CrR 3.6 hearing provide substantial evidence to support these findings.  Hills additionally challenges finding 13, which states: "Officers Kravchun were not surveilling the 2007 Mercedes before the stop, nor were they surveilling the Motel

---

[4] In response to our Supreme Court's recent opinion in State v. Blake, No. 96873-0, slip op. (Wash. Feb. 25, 2021), (http://www.courts.wa.gov/opinions/pdf/968730.pdf), Hills submitted a motion to file a supplemental assignment of error. As our decision on the suppression issue is dispositive, supplemental briefing by the parties as to Hills' conviction for possession of a controlled substance or resentencing based on a newly calculated offender score in light of Blake is unnecessary and the motion is denied.

Express." This finding is also supported by the testimony adduced at the hearing; specifically when the Kravchuns explained they suddenly noticed the vehicle as it turned into the motel in front of them while they were patrolling.

However, finding 12 states: "Officers Kravchun made the stop of the vehicle because of the inoperable rear license plate and for no other purpose." This finding is not supported by substantial evidence, in that the review of the record supports the conclusion that the officers had a mixed motive as to stopping the vehicle. Much of the evidence provides the officers were aware of the general location, and even more specifically the motel, as a high drug area. The Kravchuns contradicted their own proffered justification as to why they utilized their discretion to stop the vehicle for an inoperable license plate light. Their decision is colored by the fact that they had a "primary mission" of addressing "problem places and problem people," yet a vehicle with a non-functioning rear license plate light became their focus. However, they ultimately did not issue a citation nor did their testimony indicate they even discussed the matter with the driver beyond informing him of the purpose of the stop.[5] Perhaps most critically, a third ACT officer was nearby listening for radio traffic of other members of this emphasis patrol team, and promptly arrived at the scene of a traffic infraction within moments of the stop. This fact is highly suggestive that the intent of law enforcement in this incident was more consistent with the mission of their proactive patrol team than merely exercising their general authority to enforce traffic laws. The evidence demonstrates that the contact with the Mercedes was a mixed-motive stop.

---

[5] Anatoliy testified that "most" of his traffic stops are "educational moments that I can tell the person what's going on with their car."

Article I, section 7 of our state's constitution protects the "private affairs" of each person from disturbance imposed without "authority of law." WASH. CONST. art. I, § 7. "This provision of our state constitution is explicitly broader than the Fourth Amendment to the United States Constitution, protecting private affairs broadly and also requiring actual legal authorization for any disturbance of those affairs." State v. Chacon Arreola, 176 Wn.2d 284, 291, 290 P.3d 983 (2012). "Warrantless disturbances of private affairs are subject to a high degree of scrutiny." Id. at 292. We presume all warrantless search and seizure violates article I, section 7 unless the State shows that the search or seizure falls within certain narrow exceptions to the warrant requirement. Id. Warrantless "investigative" traffic stops are constitutional if they are "based upon at least a reasonable articulable suspicion of either criminal activity or a traffic infraction" and they are "reasonably limited in scope." Id. at 292-93 (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

However, pretextual traffic stops are unconstitutional under our state's constitution. See State v. Ladson, 138 Wn.2d 343, 979 P.2d 833 (1999); State v. Myers, 117 Wn. App. 93, 69 P.3d 367 (2003); State v. DeSantiago, 97 Wn. App. 446, 983 P.2d 1173 (1999). "When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson, at 358-59. If a stop is determined to be pretextual, and therefore without the authority of law, all subsequently uncovered evidence must be suppressed. Id. at 359. "A pretextual stop violates article I, section 7

because it represents an abuse of a police officer's wide discretion in determining the reasonable necessity of a traffic stop in a given case." Chacon Arreola, 176 Wn.2d at 294. Our state's highest court has repeatedly acknowledged "the traffic code is extensive and complicated, and 'virtually the entire driving population is in violation of some regulation as soon as they get into their cars, or shortly thereafter.'" Id. (quoting Ladson, 138 Wn.2d at 358 n.10 (internal quotations marks omitted)). Further, in the enforcement of traffic rules, officers must exercise a great degree of discretion; "the same need for discretion is true of criminal law enforcement generally." Id. at 295. Pretext stops by police "represent an attempt to circumvent the important constitutional limits placed on police discretion in such cases." Id. In reviewing an individual's claim that a stop was pretextual, courts must look beyond the formal, asserted justification for the stop to the actual one. Ladson, 138 Wn.2d at 353.

Here, Hills argues that the officers "by untenable denials and by manipulation of terminology to evade the constitution, contended that they abandoned the purpose of their ACT patrol of Everett SODA area to enforce a license plate light law." The State responds by stating the stop was not a mixed motive stop, nor pretextual, and instead was a stop solely made for the enforcement of an observed traffic violation. This is not reflected in the record; as discussed above, the stop was one of mixed-motive. The officers testified their "primary mission" was "problem places and problem people." Mueller testified that he was near enough to "self-deploy" and arrive on scene quickly because the ACT

officers patrol in "pretty close proximity," much closer than "two to three minute response times" because they work together as a team.

The Supreme Court of our state has provided that, in the context of a mixed-motive stop, "a traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop." Chacon Arreola, 176 Wn.2d at 297. This can be understood as requiring an officer, despite other motivations, to "actually and consciously" make an "appropriate and independent determination that addressing the suspected traffic infraction . . . is reasonably necessary in furtherance of traffic safety and the general welfare." Id. at 297-98.

Here, the traffic violation the officers claimed they were enforcing was that of RCW 46.37.050(3) which provides:

> Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. Any tail lamp or tail lamps, together with any separate lamp or lamps for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

At the CrR 3.6 hearing, the officers testified the vehicle was not driving erratically or speeding, all other lights appeared functional, and the only issue observed was the rear license plate light. The Kravchuns indicated that the license plate light was a safety concern, specifically for officers who need to be able to see the license plate and determine who is driving the vehicle. However, Oleg testified that the license plate was unobstructed and the officers were able to see it clearly.

Neither testified to an interest, much less a need, in running the license plate of the Mercedes when they observed it. Effectively, they undercut their own testimony as to a safety concern or inability to conduct a preliminary inquiry with regard to this particular vehicle. The requirements set out in RCW 46.37.050(3) appear to be aimed at ensuring the license plate is viewable and the officers both testified that was not an issue here. Such testimony indicates that the stop was not reasonably necessary in furtherance of traffic safety or the general welfare.

The officers repeatedly identified the location of their patrol as being a "high drug area" and yet maintained that their focus was the enforcement of an equipment violation on a vehicle which happened to turn into a place the officers knew as a high crime site. Further, the record indicates that a third officer felt the need to respond to the scene almost immediately when he heard a traffic stop was being made by the pair of officers. These facts do not support a conclusion that the sort of discretion our state requires in a decision to enforce traffic laws was exercised here.

As such, we hold that the officers did violate article I, section 7 of our state constitution in conducting this mixed-motive stop, without the required independent determination that the stop was reasonably necessary to further general welfare or traffic safety, and that the court erred in denying the defense CrR 3.6 motion to suppress.

Reversed.

WE CONCUR: