

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39517-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| CHAD DRAY OLSON, | ) | |
| | ) | |
| Appellant. | ) | |

MELNICK, J.P.T.[1] — A jury found Chad Olson guilty of unlawful possession

of a firearm in the second degree (UPF);[2] possession with intent to deliver

methamphetamine;[3] and use of drug paraphernalia.[4] Olson claims that the trial court

erred by failing to suppress evidence that resulted from a pretextual stop. He further

claims that the court erred by excluding evidence at the suppression hearing. Olson next

argues that his UPF conviction should be reversed because it violated his constitutional

rights to bear arms or, in the alternative, it was predicated on a conviction for escape from

community custody[5] that was imposed based on a possession of a controlled substance

---

[1] Rich Melnick, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).
[2] Former RCW 9.41.040(2) (2019).
[3] RCW 69.50.401(2)(b).
[4] Former RCW 69.50.412 (2013).
[5] RCW 72.09.310.

conviction. Lastly, Olson contends the court erred by imposing a crime victim penalty

assessment (CVPA) on an indigent defendant. We remand for the trial court to strike the

CVPA, but otherwise affirm.

FACTS

*Traffic stop*

While on patrol, Officer Aaron Davis of the Colville Police Department saw a

parked vehicle pull away from a curb without signaling. As the vehicle drove toward

Davis, he noticed the front license plate was obscured by the bumper and a rear license

plate light was not functioning. Davis initiated a traffic stop on the vehicle and identified

the driver as Chad Olson.

During the traffic stop, Davis observed an open bag on the passenger seat that

contained drug paraphernalia. Davis instructed Olson to exit the vehicle. Olson initially

consented to a search of his vehicle; however, he then revoked his consent. Davis seized

the vehicle and obtained a search warrant. Pursuant to the search, Davis seized several

pieces of evidence including controlled substances, a handgun, and drug paraphernalia.

*Motion to suppress*

Prior to trial, Olson filed a motion to suppress evidence pursuant to CrR 3.6. The

trial court held a hearing and heard testimony from Davis and Olson. A summary of their

testimony follows. Olson also sought to call a witness, Kyle Bowen, but the trial court

excluded him on the basis that his proffered testimony was irrelevant.

OFFICER AARON DAVIS

Davis worked as a correctional officer for approximately six years. During

that time, he first became familiar with Olson because of the times Olson had spent

in jail. Davis learned of Olson's involvement in the Colville drug scene. When Davis

subsequently became a police officer, he continued to be aware of Olson's involvement

with controlled substances. Davis knew Olson normally drove a white pickup that

belonged to either Olson's father or his father-in-law. Davis never saw anybody but Olson

drive the vehicle. Davis had heard from other officers that Olson possessed a firearm and

drove around with it.

On the evening of Olson's arrest, Davis was on patrol, which partly involved

parking in problem or high-crime neighborhoods, or near known drug houses. He also

looked for law violators and monitored traffic speed in neighborhoods where children

were present.

Davis had patrolled on numerous occasions the neighborhood where he stopped

Olson. He knew the area was "a high[-]speed area for bus stops and for kids late at night

going to [the store] to get snacks and what not. People fly up and down [the] street at high

3

rates of speed all the time, so it's also a good spot to run traffic." 1 Rep. of Proc. (RP) (Oct. 25, 2022) at 64.

Davis first saw Olson's vehicle parked near the home of a person who was known to be involved with drugs. It was not the only home in the neighborhood that had such involvement. When he first saw Olson's vehicle, Davis did not know with certainty who had parked it. When the vehicle began moving, Davis did not know who was driving it. When Olson's vehicle drove by him, Davis made a U-turn, got behind the vehicle, and stopped it.

Davis stopped Olson for three infractions: failing to signal; having an obstructed license plate; and having a malfunctioning license plate light. Olson had not been speeding or driving recklessly.

Since becoming a patrol officer approximately two years earlier, Davis performed traffic stops on numerous individuals for the same violations that he stopped Olson. No department policy prohibited Davis from stopping vehicles for the noted violations. Davis, per his common practice, did not cite Olson for the traffic infractions, and let him off with a warning. When Davis approached the vehicle, he most likely knew Olson would be the driver.

CHAD OLSON

Olson did not contradict Davis's testimony in a material way. Olson did add that he was familiar with Davis because he had been in jail numerous times while Davis was a corrections officer. While in jail, Olson claimed he got into an argument with Davis, which ended with Davis saying that when he became a cop, he would get Olson.

The State objected when Olson attempted to call a witness, Kyle Bowen. Olson made an offer of proof that "Bowen would testify that within the past four years, while he was in custody in the jail, that . . . Davis threatened [Bowen], said the same type of thing that he said to [Olson], that when [Davis] become a police officer [he was] going to get [Bowen]." 1 RP (Oct. 25, 2022) at 102. The trial court sustained the State's objection and excluded Bowen, stating "I don't see how an independent interaction that . . . Davis has had with somebody else is relevant to this . . . ." 1 RP (Oct. 25, 2022) at 102.

After the hearing, the court made the following written findings of fact and conclusions of law:

FINDINGS OF FACT

Based on the testimony elicited at the CrR 3.6 hearing, the Court makes the following findings of fact:

1. Officer Aaron Davis is employed with the Colville Police Department as a patrol officer. One of his responsibilities as an officer is the enforcement of traffic laws.
2. On October 19, 2020, Officer Davis, of the Colville Police Department, was on patrol. He observed a white Chevrolet truck leave a parking space near the intersection of 8th and Lincoln in Colville, WA.
3. Officer Davis noted that as the driver entered the lane of travel he failed to signal. Officer Davis also observed that the front license plate was obscured by a metal bumper. Officer Davis also testified that the license plate lights were not functioning.
4. Based on these traffic infractions, Officer Davis initiated a traffic stop of the vehicle.
5. Officer Davis stated that as part of his work as a patrol officer he has conducted traffic stops for these infractions in the past as well.
6. Upon contacting the driver, Officer Davis recognized him to be the Defendant, Chad Olson. Officer Davis asked Mr. Olson to step out of the vehicle and he conducted a weapons frisk.
7. While Officer Davis was at the driver's side door, he observed what he recognized to be drug paraphernalia on Mr. Olson's front passenger seat.
8. As the traffic stop progressed, Officer Davis decided to seize the vehicle and obtain a search warrant for the contents of the vehicle.

CONCLUSIONS OF LAW

1. In *State v. Ladson*, the Washington State Supreme Court ruled that pretextual stops are unconstitutional. *See generally* 139 Wash.2d 343, 979 P.2d 833 (1999).
2. A pretextual traffic stop occurs when a police officer relies on some legal authorization as "a mere pretext to dispense with [a] warrant when the true reason for the seizure is not exempt from the warrant requirement." *Ladson*, 138 Wash.2d at 358, 979 P.2d 833.
3. Warrantless traffic stops are constitutional under article I, section 7 [of the Washington Constitution] as investigative stops, but only if based upon at least a reasonable articulable suspicion of either

6

criminal activity or a traffic infraction, and only if reasonably limited in scope. *See Ladson,* 138 Wash.2d at 350, 351-52, 979 P.2d 833 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)); RCW 46.61.021(2); *see also* [*State v.*] *Snapp*, 174 Wash.2d [177,] 197-98, 275 P.3d 289 [(2012)]; *State v. Doughty*, 170 Wash.2d 57, 62, 239 P.3d 573 (2010); [*State v.*] *Day*, 161 Wash.2d [889,] 896, 168 P.3d 1265 [(2007)]; [*State v.*] *Duncan*, 146 Wash.2d [166,] 173-74, 43 P.3d 513 [(2002)]; *State v. Nichols*, 161 Wash.2d 1, 13, 162 P.3d 1122 (2007).

4.   In *State v.* [*Chacon*] *Arreola,* the Washington Supreme Court revisited its decision in *Ladson* and considered whether a mixed-motive traffic stop—that is, a traffic stop based on both legitimate and illegitimate grounds—is a pretextual stop in violation of article I, section 7. 176 Wn.2d 284, 297, 290 P.3d 983, 991 (2012).

5.  A mixed-motive stop does not violate article I, section 7 so long as the police officer making the stop exercises discretion appropriately. Thus, if a police officer makes an independent and conscious determination that a traffic stop to address a suspected traffic infraction is reasonably necessary in furtherance of traffic safety and the general welfare, the stop is not pretextual. That remains true even if the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason that is insufficient to justify a stop. In such a case, the legitimate ground is an independent cause of the stop, and privacy is justifiably disturbed due to the need to enforce traffic regulations, as determined by an appropriate exercise of police discretion. [*Chacon Arreola*, 176 Wn.2d at] 298-99, 290 P.3d 983, 991 (2012).

6.  A police officer cannot and should not be expected to simply ignore the fact that an appropriate and reasonably necessary traffic stop might also advance a related and more important police investigation. An officer's motivation to remain observant and potentially advance a related investigation does not taint the legitimate basis for the stop, so long as discretion is appropriately exercised, and the scope of the stop remains reasonably limited based on its lawful justification. [*Chacon Arreola*, 176 Wn.2d at] 299, 290 P.3d 983, 992 (2012).

7. A trial court's consideration of a challenge to an allegedly pretextual traffic stop should remain direct and straightforward. The trial court should consider both subjective intent and objective circumstances to determine whether the police officer exercised discretion appropriately. The trial court's inquiry should be limited to whether investigation of criminal activity or a traffic infraction (or multiple infractions), for which the officer had a reasonable articulable suspicion, was an actual, conscious, and independent cause of the traffic stop. [*Chacon Arreola*, 176 Wn.2d] at 299-300, 290 P.3d 983, 992 (2012).

8. In the present case, Officer Davis decided to pull over the vehicle that Mr. Olson was driving for three separate traffic infractions. There is nothing in the record to suggest that he had a different reason for initiating this stop.

9. Assuming, arguendo, that Officer Davis recognized Mr. Olson prior to the stop, and suspected him of being engaged in criminal activity his actions are not violative of Mr. Olson's rights as Officer Davis would have been performing a "mixed-motive" stop.

ORDER

IT IS ORDERED that the Defendant's Motion to Dismiss pursuant to CrR 3.6 is DENIED.

Clerk's Papers (CP) at 58-61 (boldface omitted) (first alteration in original).

*Subsequent proceedings*

A jury subsequently found Olson guilty. Olson filed a motion for arrest of judgment and dismissal of his UPF conviction because the State admitted a certified judgment and sentence of an escape from community custody conviction to prove that Olson had a prior felony conviction disqualifying him from possessing a firearm.

8

Olson claimed that "the community custody was imposed on an unconstitutional possession of a controlled substance conviction." CP at 108. The trial court denied the motion.

At sentencing, the trial court imposed a $500 CVPA. The trial court did not indicate on the judgment and sentence whether Olson was indigent. The trial court did find Olson indigent for purposes of appeal. Olson appeals.

## ANALYSIS

*The seizure*

Olson contends that the trial court erred by not suppressing the fruits of an illegal pretext stop, by not suppressing evidence because the scope and duration of the detention was not related to the reason(s) for the stop, and by excluding a witness at the suppression hearing. We disagree.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Initially, Olson challenges two of the trial court's findings of fact and argues that substantial evidence does not support findings 2 or 3. He also challenges conclusions of law 8 and 9, arguing that they are actually findings of fact.

"The trial court is tasked with resolving issues of credibility and weighing evidence, and we give great deference to its factual findings." *State v. Taylor*,

29 Wn. App. 2d 319, 328, 541 P.3d 1061, *review denied*, 3 Wn.3d 1003, 549 P.3d 116 (2024). "We review the denial of a motion to suppress for substantial evidence supporting the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law, and we review the trial court's conclusions of law de novo." *State v. Teulilo*, 1 Wn.3d 595, 602-03, 530 P.3d 195 (2023); *State v. Chacon Arreola*, 176 Wn.2d 284, 291, 290 P.3d 983 (2012). Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the finding. *State v. Anderson*, 200 Wn.2d 266, 286, 516 P.3d 1213 (2022).

Finding of fact 2 states: "On October 19, 2020, Officer Davis, of the Colville Police Department, was on patrol. He observed a white Chevrolet truck leave a parking space near the intersection of 8th and Lincoln in Colville, [Washington]." CP at 58. Olson argues that Davis was not merely on patrol, but that he was acting proactively in a high crime area. Olson concedes that Davis was also on routine patrol. Appellant's Opening Br. at 26. The trial court's finding that Davis was on patrol is supported by substantial evidence in the record. The duties of a patrol officer encompass the acts Davis performed.

Finding of fact 4 states: "Based on these traffic infractions, Officer Davis initiated a traffic stop of the vehicle." CP at 59. Substantial evidence in the record supports this finding. The trial court heard testimony that Davis initiated the traffic stop because of

traffic violations. There is nothing in the record to show that, had the infractions not occurred, Davis would have stopped Olson. The trial court weighed the credibility of the witnesses and decided what weight to give their testimony. We do not disturb those determinations on appeal.

Conclusion of law 8 states: "In the present case, Officer Davis decided to pull over the vehicle that Mr. Olson was driving for three separate traffic infractions. There is nothing in the record to suggest that he had a different reason for initiating this stop." CP at 61. We agree with Olson that the second sentence of this conclusion is a factual finding, and we review it as such. First, we conclude that substantial evidence supports the first sentence of this conclusion. Next, we conclude that substantial evidence does not support the second sentence. There is evidence in the record that Davis "had a different reason for initiating this stop."[6] CP at 61. Although Davis only stopped Olson because of the infractions, there is evidence that Davis had other reasons to want to stop Olson. We strike this finding and do not consider it in our review.

---

[6] The trial court could have intended this sentence to be based on making credibility determinations and weighing the evidence from the suppression hearing. It could have said it did not believe the testimony of a witness. However, as written, this finding does not reflect that this meaning is what the court intended, and we do not interpret it as such. Therefore, we strike it.

Conclusion of law 9 states: "Assuming, arguendo, that Officer Davis recognized Mr. Olson prior to the stop, and suspected him of being engaged in criminal activity his actions are not violative of Mr. Olson's rights as Officer Davis would have been performing 'a mixed-motive' stop." CP at 61. Olson does not specify which part of this conclusion is a finding. To the extent that Olson claims the Davis did not act with mixed motives, we conclude that substantial evidence in the record supports that assertion.

TRAFFIC STOP

Although warrantless traffic stops are constitutional, under article 1, section 7, of the Washington Constitution, pretextual traffic stops are unconstitutional. *State v. Ladson*, 138 Wn.2d 343, 351-52, 979 P.2d 833 (1999). When a police officer relies on some legal authorization as a "mere pretext to dispense with the warrant when the true reason for the seizure is not exempt from the warrant requirement," a pretext traffic stop occurs. *Ladson*, 138 Wn.2d at 358. "When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." *Ladson*, 138 Wn.2d at 358-59. "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *Ladson*, 138 Wn.2d at 359.

A mixed-motive stop, one based on both legitimate and illegitimate grounds,

does not violate our constitution.

> [A] traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion is an actual, conscious, and independent cause of the traffic stop. In other words, despite other motivations or reasons for the stop, a traffic stop should not be considered pretextual so long as the officer actually and consciously makes an appropriate and independent determination that addressing the suspected traffic infraction (or multiple suspected infractions) is reasonably necessary in furtherance of traffic safety and the general welfare.
> . . . .
>
> Thus, if a police officer makes an independent and conscious determination that a traffic stop to address a suspected traffic infraction is reasonably necessary in furtherance of traffic safety and the general welfare, the stop is not pretextual. That remains true even if the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason that is insufficient to justify a stop. In such a case, the legitimate ground is an independent cause of the stop, and privacy is justifiably disturbed due to the need to enforce traffic regulations, as determined by an appropriate exercise of police discretion. . . .

*Chacon Arreola*, 176 Wn.2d at 297-99.

The trial court has been directed to "consider the presence of an illegitimate reason

or motivation when determining whether the officer really stopped the vehicle for a

legitimate and independent reason (and thus would have conducted the traffic stop

regardless). But a police officer cannot and should not be expected to simply ignore the

fact that an appropriate and reasonably necessary traffic stop might also advance a related

13

and more important police investigation." *Chacon Arreola,* 176 Wn.2d at 299. The trial

court must focus "on the alleged legitimate reason for the stop and whether it was an

actual, conscious, and independent cause." *Chacon Arreola,* 176 Wn.2d at 300.

In this case, the trial court considered both Davis's illegitimate reasons or

motivations as well as his legitimate and independent reasons for the stop of Olson.

In making factual findings, the court made credibility determinations. The trial court's

factual finding that Davis stopped Olson for legitimate reasons is supported by substantial

evidence. Davis has, on numerous occasions, stopped individuals for the same infractions

Olson committed. Although there were mixed motives, we conclude that the trial court's

factual findings support its conclusions of law. The trial court did not err by denying the

motion to suppress.

SCOPE AND DURATION OF TRAFFIC STOP

Olson claims that the scope and the duration of the traffic stop rendered it

unconstitutional.[7] We disagree.

---

[7] Olson seems to argue that the scope and the duration of the traffic stop demonstrates it was pretextual. However, the trial court made no findings on this issue and there is nothing in the record to indicate the defendant proposed such a finding. However, we note that the police cannot and should not ignore the fact that a legitimate traffic stop may also advance a related and more important investigation. *Chacon Arreola,* 176 Wn.2d at 299. This other investigation will inevitably and necessarily prolong the detention.

14

"Whenever any person is stopped for a traffic infraction, the officer may detain that person for a reasonable period of time necessary to identify the person, check for outstanding warrants, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction." RCW 46.61.021(2). However, a separate but related investigation may affect the duration and scope of the stop. *Chacon Arreola*, 176 Wn.2d at 299.

In this case, upon stopping Olson for the traffic infractions, Davis approached the vehicle and observed an open bag with drug paraphernalia. From this point, Davis's investigation expanded. Based on the totality of the circumstances, the duration and scope of the investigation was reasonable.

EXCLUSION OF TESTIMONY AT SUPPRESSION HEARING

Olson argues that the trial court erred by excluding Kyle Bowen's testimony. We disagree.

Strict adherence to Washington's rules of evidence is not required in suppression hearings. ER 1101. However, we find guidance in applying the rules in the present case. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

15

probable than it would be without the evidence." ER 401. Irrelevant evidence is not admissible. ER 402.

A trial court's evidentiary rulings will be reversed only on a showing of manifest abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). "A discretionary [trial court decision] will not be disturbed on appeal without a clear showing of abuse of discretion, that is, discretion that is manifestly unreasonable or exercised on untenable grounds, or for untenable reasons." *State v. Smith*, 90 Wn. App. 856, 859-60, 954 P.2d 362 (1998).

In the present case, the trial court did not abuse its discretion by excluding Bowen's testimony on the basis that it was irrelevant.

*UPF conviction*

Olson claims that his conviction for UPF is unlawful for two reasons. First, he argues that the Second Amendment to the United States Constitution does not bar people with a nonviolent felony conviction from possessing firearms. Second, Olson argues that his conviction for UPF is unlawful because it was based on a conviction for escape from community custody that arose from an unconstitutional conviction for drug possession. We disagree.

Olson argues that because the predicate crime for which he is barred from legally possessing a firearm is a nonviolent offense, escape from community custody, Washington's statute is unconstitutional.

We review constitutional issues de novo. *City of Seattle v. Evans*, 184 Wn.2d 856, 861, 366 P.3d 906 (2015). Statutes are presumed to be constitutional, and the challenger of a statute has the burden to show unconstitutionality. *Evans*, 184 Wn.2d at 861-62. "An as-applied challenge to a statute's constitutionality requires examination of the statute in the specific circumstances of the case." *State v. Ross*, 28 Wn. App. 2d 644, 646, 537 P.3d 1114 (2023), *review denied*, 2 Wn.3d 1026, 544 P.3d 30 (2024).

The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." However, this constitutional amendment does have its limits. *Dist. of Columbia v. Heller*, 554 U.S. 570, 595, 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Nothing "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Heller*, 554 U.S. at 626.

The Second Amendment protects the right of "ordinary, law-abiding citizen[s]." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8-9, 142 S. Ct. 2111, 213

L. Ed. 2d 387 (2022). As pointed out in *Ross*, 28 Wn. App. 2d at 649, 651, the majority

in *N.Y. State Rifle* iterated this proposition on at least eleven occasions.

There is a long standing historical basis and tradition for prohibiting felons from

possessing firearms. *Heller*, 554 U.S. at 626; *McDonald v. City of Chicago*, 561 U.S. 742,

786. 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010). Further, the United States Supreme Court

never distinguished between the rights of violent and nonviolent felons when it comes to

possessing firearms. *Ross*, 28 Wn. App. 2d at 651.

In *State v. Bonaparte*, 32 Wn. App. 2d 266, 554 P.3d 1245 (2024), we affirmed the

defendant's conviction for UPF. Although the predicate offense that prohibited the

defendant from legally possessing a firearm was a crime of violence, *Bonaparte* points

out that other courts have "upheld prohibitions on the possession of firearms by non-

violent felons." *Bonaparte*, 32 Wn. App. 2d at 277-79.

We conclude that Olson's UPF conviction is not unconstitutional, even though

the underlying predicate is a nonviolent offense.

Olson also claims that his conviction for UPF must be reversed and vacated

because the underlying conviction upon which the unlawful possession is based, escape

from community custody, was imposed as part of the sentencing for a simple drug

possession. Olson argues that because *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521

18

(2021), invalidated the drug possession law, his conviction for escape from community custody from that crime must also be vacated.

Olson's 2014 escape from community custody conviction was pursuant to RCW 72.09.310. CP at 112. The validity of a conviction under RCW 72.09.310 does not turn on the constitutionality of the crime giving rise to community confinement. *See State v. Gonzales*, 103 Wn.2d 564, 567, 693 P.2d 119 (1985). As we have previously recognized, a defendant who is subject to the jurisdiction of the state based on a prior conviction "must submit to confinement until discharged by due process of law." *State v. Paniagua*, 22 Wn. App. 2d 350, 358, 511 P.2d 113, *review denied*, 200 Wn.2d 1018, 520 P.3d 970 (2022). If a defendant believes their prior conviction is invalid, the "remedy is to seek a declaration of the unconstitutionality of the statute, not flee from justice." *Paniagua,* 22 Wn. App. 2d at 359.

In *Gonzales,* our Supreme Court held that a person charged under the first degree escape statute could not challenge the constitutional validity of the convictions that led to confinement. The court stated, "that in a prosecution for escape the State is not required to prove the defendant had been detained pursuant to a constitutionally valid conviction." *Gonzales*, 103 Wn.2d at 565.

In *Paniagua*, we affirmed the defendant's bail jumping conviction when the underlying crime for which the defendant failed to appear was later invalidated on constitutional grounds. *Paniagua*, 22 Wn. App. 2d at 358.

Here, Olson was convicted in 2012 of possession of a controlled substance under former RCW 69.50.4013(1) (2003). CP at 129. The trial court placed him on community custody. Olson was then convicted in 2014 of escape from community custody by violating the court's order to make himself available to the department overseeing his community custody. The fact that the conviction giving rise to the trial court's order regarding community custody was subsequently invalidated does not excuse Olson's actions in escaping from community custody. The conduct that led to Olson escaping from community custody was based on separate conduct from his possession conviction. We reject Olson's arguments on this issue.[8]

*CVPA*

Olson contends that because he was indigent, the court improperly imposed the $500 CVPA on him. The state concedes that if Olson was indigent at sentencing, the CVPA was improperly imposed.

---

[8] Neither party briefed nor argued whether Olson's challenges to the UPF conviction are a proper or improper collateral attack on a prior conviction. We do not address that issue. RAP 12.1.

Here, the trial court did not specifically make a finding of indigency at Olson's sentencing. However, one week later it did find Olson indigent for purposes of appeal. Although we recognize the standards for indigency may vary, the record is clear to us that Olson was indigent at the time of sentencing. We remand to the trial court with direction to strike the CVPA from Olson's judgment and sentence.

CONCLUSION

We affirm Olson's convictions, but remand to the trial court to strike the CVPA.

Melnick, J.P.T.

Melnick, J.P.T.

WE CONCUR:

Lawrence-Berrey, C.J.

Lawrence-Berrey, C.J.

Cooney, J.

Cooney, J.